---

O'BRIEN v. UNION MUT. LIFE INS. CO.[1]

*(Circuit Court, D. Minnesota. December Term, 1884.)*

LIFE INSURANCE—PREPAYMENT OF PREMIUM—WAIVER BY AGENT—VALIDITY OF POLICY.

Although in the printed policy and the application for life insurance it is stated that no policy will be considered valid and binding until the premium is paid, a general agent of a foreign company may waive such condition and give credit, and as the evidence in this case shows that the delivery of the policy in suit was unconditional, and that the agent did in fact waive the terms thereof requiring prepayment, the policy should be *held* valid, and plaintiff allowed to recover the amount of insurance, with interest, after deducting the amount of premium due and unpaid.

At Law.

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

*Thomas H. Quin,* for plaintiff.

*A. D. Keyes,* for defendant.

NELSON, J. This suit is brought by Mary O'Brien against the Union Mutual Life Insurance Company, to recover upon a policy of insurance, dated December 4, 1884, for $1,000. The insured, Richard J. Vaughan, died March 16, 1883. The evidence showed that among his papers was found this policy on his life, payable to his mother, Mrs. Vaughan, now Mrs. Mary O'Brien, accompanied by a receipt, signed by the agent of the insurance company in the state of Minnesota, for the amount of the first premium; and the policy, with the admission of death and the receipt, being offered, the plaintiff is entitled to a judgment, unless the defendant can overcome the *prima facie* case presented upon the proof thus offered by the plaintiff. The policy contains the following clause:

"If any premium, or any installment of premium, on this policy shall not be paid when due, the consideration of this contract shall be deemed to have failed, and the company shall be released from liability, except as hereinafter provided; and the only evidence of payment shall be the receipt of the company, signed by the president or secretary."

And again:

"The contract between the parties hereto is completely set forth in this policy and the application therefor, taken together, and none of its terms can be modified, nor any forfeiture under it waived, except by an agreement in writing signed by the president or secretary of the company, whose authority for this purpose will not be delegated."

The application for insurance substantially recites the same provision. In the application, which is a part of the policy, it is stated—

"That it will constitute no contract of insurance until a policy shall first have been issued and delivered by the said company, and the first premium thereon actually paid, during the continuance of the life proposed for insurance in the same condition of health as described in the application."

It appeared upon the trial that the application for insurance was taken on the solicitation of J. J. Hart, acting on the behalf of the defendant, who made it out and sent it to Minneapolis to the manager of the company for Minnesota and Dakota, A. K. Shattuck, who has general charge of the defendant's business. The application was dated November 27, 1882. No premium at that time was paid to Hart, but Vaughan promised to pay for the policy as soon as it issued and was delivered. The application was sent to the superintendent of the western agencies at Chicago, and in due course of time the policy in suit and receipt, dated December 4, 1882, were received by the Minneapolis agent, who entered it in his register of policies, and inclosed it in an envelope with the following letter, dated December 11, 1882, and sent it to Vaughan: "DEAR SIR: Inclosed find your policy 76,494. The first semi-annual premium will be due December 15, 1882. We trust you will find your policy satisfactory. A. K. SHATTUCK, Manager." The books of the company, and the evidence of the manager, show that no premium was ever paid, and an

effort is made to show by the evidence of Hart—and he so testified—
that in a conversation with Vaughan before he died, and five or six
weeks after the policy was sent by the Minneapolis agent, he stated
that "he would give up the policy, as he did not feel able to pay for
it, and would return the policy to Shattuck." He never did so, how-
ever. I hardly think this testimony is admissible, Vaughan being
dead, and no one present at the conversation but Vaughan and wit-
ness. However, giving it full force and effect, in connection with
the other evidence of the defendant's witnesses, Messrs. Shattuck
and Lawrence, it is clear to my mind that the company, through its
agent, waived the cash payment and delivered the policy, giving him
time to pay the premium. In so doing, the contract of insurance
was complete, whether the company charged the agent with the
amount of the premium when the policy was delivered without actual
payment or not, and although no return of premium was ever made
to the company.

The defendant received the policy in December, 1882, and as late
as January 9, 1883, the manager addressed a letter to Vaughan, call-
ing his attention to the amount of premium due and requesting its
payment, thus recognizing the contract of insurance. It was not un-
usual for policies to be delivered without cash payments, as appears
by the testimony, but in every instance previous time notes were taken
for the amount of the premium due, and these notes were furnished
the agents by the company. It is urged that the company's agent or
manager had no authority to deliver policies without the payment of
the semi-annual premium, or receipt of a note for it; but the facts in
the case, including the letters of the agent, Shattuck, show clearly a
credit was intended; and it is well settled that although in the printed
policy and application it is stated that no policy will be considered
valid and binding until the premium is paid, yet an agent like Shat-
tuck, representing a foreign company, may waive such condition and
give credit, and such appears to be the manner of conducting the
business of the company by the manager in this state. There is no
evidence that the policy was delivered to the assured on condition
that the premium should be paid or the policy returned. Vaughan
agreed with the solicitor, Hart, November 27, 1882, to take the insur-
ance and pay the premium when he went to Minneapolis, or send the
money, and the policy was delivered on such terms. He failed to
fulfill his promise and did not return the policy. That such failure did
not render the contract of insurance invalid, and that the manager
did not so regard it, is clear; for as late as January 9, 1883, he wrote
a letter to Vaughan, above referred to, which reads as follows: "Jan-
uary 9th. *Richard J. Vaughan, Faribault, Minn.*—DEAR SIR: Please
remit $16.13, the first semi-annual premium on your policy of $1,000.
It was due the first of this month, but we overlooked you. Please
respond at once. Respectfully, A. R. SHATTUCK." This letter recog-
nizes the contract of insurance as valid and subsisting. If agents of

insurance companies do not intend to give credit for the payment of premiums, they should not deliver the policies without payment. There is no evidence in this case to indicate a conditional delivery of the policy. On the contrary, I am of the opinion that the agent waived the terms of the policy requiring the prepayment of the premium before the policy took effect, which was binding upon the company. The plaintiff is entitled to a judgment for the sum of $1,000, with interest from May 29, 1883, to date, deducting the amount of the premium due, $16.13. Judgment will be entered for that amount.